The next case is Image Processing v. LG Electronics, number 232136. Mr. Carson, when you're ready. May it please the court. My name is Michael Carson of Winstead, PC, and I represent plaintiff and appellant here, Image Processing Technologies, LLC, often also abbreviated IPT. This case presents a relatively clean claim construction issue. But more fundamentally, the question here is whether a patent can be broadened through claim construction beyond even its broadest reasonable interpretation just to be invalidated. And invalidated by the inventor's own work that the PTO had repeatedly considered and found insufficient to invalidate the patent, because that's not the case. There are two undisputed technical realities that really drive the issue here. One, one histogram calculation unit can only calculate one histogram at a time. Two, any one histogram is only representative of a single parameter. So there is a one-to-one-to-one relationship between histogram calculation units, histograms, and a parameter. Here, the last limitation of Claim 1 of the 293 patent, the only claim at issue in this case, introduces the capabilities of the claimed histogram calculation units. All the other limitations from the preamble until that last limitation describe the requirements of the visual perception processor, which must include two histogram calculation units at a minimum. The last limitation changes the focus and talks about the capabilities and what the histogram calculation units must be configured to do. And that change in focus makes the change in language critically important. The first clause of the last limitation, the histogram calculation units being configured to form a histogram representative of the parameter, is the phrase in dispute. And it should have been construed to mean the at least two histogram calculation units being configured to each form a histogram representative of at least one common parameter. That's the common parameter requirement. Perhaps that's how the claim should have been drafted. Isn't it the more natural reading that the antecedent basis for the parameter disputed phrase goes all the way back to at least one digitized parameter in the preamble? We don't normally separate out the preamble from the rest of the claim when it uses the same language. Your Honor, I respectfully disagree because the focus of the claim changes in that last limitation. I'm not familiar with that concept of we can use the same words, we can have an antecedent basis, but yet we're going to shift the focus at a certain point in the claim. Where have we said that that allows a patent drafter to change the meaning of a word by shifting the focus in a claim? Your Honor, it's a function of those undisputed technical realities. There is no such thing as a histogram of multiple parameters. No party has suggested otherwise. There is no such thing as two histogram calculation units kind of co-processing a single histogram. There is parallel processing, multiple histogram calculation units processing multiple histograms. But there's no co-processing and no party has suggested otherwise. You're saying it's technically impossible to have two HCUs each putting in a single histogram. Setting out or creating one histogram on their own. So we've got two HCUs, two histograms. And it turns out that those two histograms at a moment in time are related to two different parameters. That's technically impossible? I believe the answer is that it's not impossible if I understood the way you said it, Judge Strzok. Two histogram calculation units can generate two histograms. Each histogram calculation unit making one histogram. That's not technically impossible, that's what happens. That can happen, yes, Your Honor. And those two histograms could be representative of different parameters. But that's not what Claim 1 requires. Well, that's the dispute. The board's construction would rule out that embodiment that you and I just talked about, correct? The construction that the patent holder has always advocated for, which was adopted by the PTAT in prior proceedings, would rule that out. And I thought what your argument was, we shouldn't let that happen because it's technically impossible. But you're now agreeing with me. It's not technically impossible, it's just you say now what you claim. What you've described, Judge Strzok, is not technically impossible. What I was saying was technically impossible is the idea of two histogram calculation units working on one histogram. That is not something that the 293 patent discusses. That would be what I would term kind of co-processing. That's not what the patent talks about. And there is no notion of one histogram, which would have been generated by one histogram calculation unit, being representative of more than one parameter. So the technical reality means that if you've got a histogram calculation unit configured to form a histogram representative of the parameter, as a function of the technical realities involved here, that has to only be one parameter in the histogram. And because you have to have two histogram calculation units configured to do this, both histogram calculation units must form a histogram of the same parameter. That's the common parameter requirement. You could have an embodiment, Judge Stark, where you would have, say, 16 histogram calculation units comprised in a matrix. It is not the case that all 16 must create a histogram of the same parameter. What this limitation requires, however, is at least two of those histogram calculation units at some point treat a common parameter when they form their histograms. And the technical reality is what requires this common parameter requirement. It's been there in the claim language. It's in the specification. It was recognized in the intrinsic record when this issue was first brought to bear in an IPR. And that first IPR is important. In that first IPR, the 336 IPR, the petitioner, in its petition, applied the claim to require one parameter. I believe there it was called an x-axis, to be the parameter for two histograms simultaneously. In the response, IPT offered an express construction of this term, which is the same express construction it has offered all throughout all proceedings. And there, that wasn't offered to get around some argument that the petitioner was making in the IPR. It was perfectly consistent with the argument the petitioner made in the IPR. It was offered to clarify things. Now, we have always maintained that the scope of this claim has never changed. It's always included this so-called common parameter requirement. But even if this court were to disagree, that assertion in the 336 IPR is a clear narrowing of the claim. And once that was done and adopted by the PTAB as the broadest reasonable interpretation, it's error for the district court under the Phillips standard to announce an even broader claim construction. Not if the board was wrong. That's correct. And no party appealed any of those IPR decisions. In fact, my friend also filed an IPR petition. LG also filed an IPR petition here. And there, LG told the PTAB, apply the same construction in that PTAB proceeding. The same construction we've advocated. I'm not sure that the district court heard it in the term of disclaimer. And as we noted in our reply brief, I think that that is a reasonable, although perhaps imperfect word. Because it suggests a change in claim scope. And we contend the patent holder has always maintained a consistent claim scope. You added this whole last limitation to overcome this RICA prior art, correct? Yes, Your Honor. I thought at least one of your arguments to us is that was a disclaimer of claim scope. But I didn't see you argue that to the district court. Did I get that wrong? Not in the terms of disclaimer, but the same intrinsic evidence that we have advocated before this court is the same intrinsic evidence, both pre issuance and post issuance that was advocated to the district court. So whether it is in the terms of disclaimer or in the terms of the intrinsic record that the PTAB has repeatedly time and time again looked to and found persuasive, the same argument was presented to the district court below. Notably, not only do the claims require this single parameter, but the specification importantly that column 21, line 43 to 47, in the context of figure 32, which I see I'm in my rebuttal time. May I continue? It's your time. Which no party disputes relates to claim one. There the specification says the control unit provides overall control and determines which of the parameters, identifying 21 of them, are to be processed at a given time by one or several polyvalent, dedicated polyvalent histogram units. That's where the specification describing this common parameter requirement reflected in the killing. Unless the court has any further questions or reserve any remaining time for rebuttal. Thank you. Counsel, how do you pronounce your last name? Leang. Mr. Leang, when you're ready. Your Honor, may it please the court, my name is Mark Leang. Today I'll be speaking on behalf of the LG Appellees. Your Honor, as was noted in the opening remarks just now, the parameter is not singular, or at least is not required to be singular. It could be plural, because it finds antecedent basis in the word at least one parameter, which appears twice earlier in the claim. The preamble, where it says at least one digitized parameter, and then immediately preceding limitation. It says at least one parameter, and we cited several cases in our briefing, holding that this situation, where a noun finds antecedent basis in a prior term, inherits the numerosity of the term from which it derives the antecedent basis. In this case, at least one parameter. There's no exception to this rule that's ever been cited by the other side. We could not find any. Instead, they tried to create other arguments, and we heard a couple in my opposing counsel's opening remarks. One of them is this technically possible argument, which is that at any given time, you have one HCU, one histogram, one parameter. And that's fine, technically, but that's not what the claim says. The claim says you have multiple HCUs. There's no dispute about that. The claim also says, and this is also not the case that there's only one histogram. Instead, it says a histogram representative of the parameter, and this invokes another numerosity rule, which is that a means one or more. So when we look at it correctly from those rules of numerosity, the claim is actually perfectly consistent. We have multiple histogram calculation units, HCUs. We have one more histogram, and then we have at least one parameter. So there's no singularity requirement here. In fact, I think in their brief, the reply brief, page 11, footnote 3, and I think they hinted at this in their remarks just now, they basically contradict their position. They stated in footnote 3, page 11 of the reply, claim 1, this is their position on what the claim means. Claim 1 requires multiple HCUs to separately treat the same parameter at the same time, generating separate histograms. Emphasis on the last three words, generating separate histograms. So they actually stated this claim has separate multiple histograms. Well, then how can there only be one histogram? If there are separate multiple histograms, why do they have to be for the same parameter? Why can't they be for different parameters? The other argument they make is, it was also made earlier in the remarks, was that there's actually been a change in what the claim is about. The earlier part of the claim was about overall system with multiple parameters. And when we get to this claim, we're actually talking about a subpart or something to that effect, a subpart of the system with only one common parameter. But there's nothing in the claim to support that understanding. In fact, the limitation immediately before the disputed phrase says almost the same thing. At least two histogram calculation units for treatment of the at least one parameter. And then the disputed phrase falls immediately after that, referring again to plural HCUs being configured to form a histogram representative of the parameter. There's nothing separating those two limitations and nothing else in the claim suggesting that the claim should be limited to a subpart or we're talking about a different type of parameter. In fact, that defeats the whole unseen basis rule. The whole point of using the parameter is because it's referring to exactly the same, at least one parameter earlier in the claim. You have an argument, if I understand correctly, that the specification actually discloses embodiments that would be excluded under their construction. If that's right, can you help me see an example of that? Yeah. So, in fact, every embodiment in this specification, including the figure 32 embodiment they talked about, envisions multiple HCUs, each processing a different parameter. In figure 1 and 30, this is actually the only use case. Can you show me? I understand how it envisions multiple HCUs, each HCU generating one histogram, but how can I see that those histograms are all representing different parameters and no two of them are representing a common parameter? How do I see that? Yeah, that's in figure 1 and 30, both those embodiments, which their construction excludes, they each show five HCUs that are labeled A, B, C, D, and E, and each of them receives a separate parameter, A, B, C, and D, and E. So in those ones, those two embodiments, they don't even contemplate two HCUs processing or more HCUs processing the same parameter. Each of them only allows each HCU to process one of the parameters. So to be consistent with their construction, it would have to be at least one of A through E, HCU A through E, at least two of them would have to generate a histogram tracking the same parameter. So two of them would say A, for example. Yeah, under their construction, you would have to require all or at least two of them to process the same parameter, but that contradicts those embodiments. So that's our issue, really, with their construction. And on that note, I just want to conclude by talking about the PTAB history here, because they rely quite heavily on that, the IPRs that Samsung and LG have filed. First off, I think he was a bit misleading in our view about what LG's position was. They were also misleading in the reply. LG didn't propose the common parameter construction or even implicitly adopt it. Rather, in our petition, we stated, this is Appendix 3350, I'll just quote, and this is in our response brief, Petitioner LG reserves the right to dispute this construction, the common parameter construction, and other proceedings, including to the extent the claims argue to require a common parameter. However, there's no need to address that dispute here, where the Prior Act discloses Claim 1 even under the Board's narrow common parameter construction, applied by Petitioner here for this proceeding only. So we actually recognized there was a dispute over this construction. We thought the Board's construction was, too, as we said, narrow. But it wasn't worth spending the space, the limited words that we had in the IPR, to address the dispute when we didn't think it mattered. We felt our Prior Act disclosed the common parameter requirement anyway. The Board ultimately denied the institution for discretionary reasons, but that was our position. We did, you know, we've seen each party spend about 50 pages on this one issue, and we didn't have the space to spend on an issue that didn't matter in the IPR. As to Samsung, that was a separate party, and they never proposed the common parameter construction either. That was something that IPT proposed, and the Board adopted in the first IPR, and they just carried forward that wrong construction through subsequent proceedings. A couple of other quick things, and I'll conclude. You know, they've repeated at the outset and again that we can't be broader than the BRI. Well, the whole dispute is, was that BRI right? So if it's not right, then that doctrine is kind of irrelevant. And to this point, in our briefing, we cited, and I want to reemphasize this case, the Exmark v. Briggs case from this court in 2018, where the PTO had initially adopted one construction, a BRI, for a claim term, confirmed the claims over the Prior Act, and then the District Court adopted a different Phillips construction that was actually broader. This court affirmed that broader construction, finding there was nothing wrong with the fact that it was broader, nor the fact that it could lead to a situation where the jury could find the same claims invalid. So the situation has arisen before. And then finally, on the disclaimer point, Your Honor, initially, well, first off, on the record, the original prosecution with RIPCA was never raised in lower court. This is a totally new set of arguments they're raising. As to the disclaimer for the IPRs, two points. One, as we state in our briefing, disclaimer, or if you want to call it something else, prosecution statements, can't be used to refute or contradict the plain language of the claims, which is what's happening here, adding unstated limitations. This is a legal doctrine that the other side has not disputed. And IPT also tried to make a, I guess, a fairness argument that, you know, if the situation were reversed, we were trying to propose a broader construction than what we had set forth for the PTO, we wouldn't be allowed to do that. But that's not what's happening here, and that's precisely the point. They're actually trying to take the construction that they proposed to the PTO in a parallel proceeding at the same time as litigation, and say, well, since we said that to the PTO at the same time as litigation, you have to follow it. And that, you know, raises policy concerns and should not be permitted here. With that, Your Honor, unless there's any further questions, we request affirmance of the district court's construction. Thank you. The claims require this common parameter requirement, and not only can it be seen in the change in language, where parameter is used as the parameter as opposed to other places in the claims where it's at least one parameter or Claim 2's parameters plural. But also the requirement that you have to compare the parameter and the selection criteria in C. That's also singular. The claim reflects these technical realities, and those technical realities are what went in to what was stated in the original 336 IPR. Now, the fact of the matter is this court has found that the intrinsic record includes IPR proceedings before the PTO. And contrary to what my friend just said, the time IPT made the statement about this common parameter requirement in an IPR was in the Samsung IPR, not a parallel proceeding with the LG case that we're hearing. And this court has found in 2022 in the Cup Computing AS versus Trend Micro case, 53, F4, 1376 at 1383, that to be clear, a disclaimer in an IPR proceeding is binding in later proceedings, whether before the PTO or in court. There's no dispute that IPT's proposed construction is narrower than what the district court found. And so when you've got this narrow construction or a broad construction, and the patentee in an earlier proceeding has elected to the extent that you think the claim language or the claim scope has changed, has disclaimed any broader scope and identified its scope, that is binding. That clear statement of claim scope should have been taken into account by the district court and should have been given effect. The fact of the matter is I submit if we were here, having made the exact same statements in the IPR, the 336 IPR, the same statements we have made repeatedly because we've always taken a consistent position here, if we were here seeking the broad construction that the district court awarded and my friends didn't want that, this court should and would hold against us the statements we made in the IPR. They reflect claim scope. They put the public on notice of the scope of the claims. There are reliance interests involved here. But just because the accused infringer is in the somewhat strange circumstance of seeking a broader construction in district court in pursuit of an invalidity attack, then that's not a disclaimer. Or we don't have to look at what happened in the IPR proceedings. We can ignore what happened there. I don't know that anyone is saying ignore it, but the prosecution history can't be relied on to contradict the plain language of your claims. And the plain language of the claims presenting parameter in the singular and different than all the other presentations of parameter throughout claim one and including claim two, which depends from claim one. That's the dispute. What do you say about specification? They say that your construction would read out the embodiments, for instance, of figure 30. Figure 30 is not an embodiment that is described by claim one. There is no requirement that every claim be construed to cover every embodiment. Any indication in the specification that figure 30 is not part of claim one? Yes. Figure 30 refers to the specific parameters by name, data A, data B, data C through E. Those specific parameters are identified in claim three, for example. They are not identified in claim one. Claim one describes multiple histogram calculation units which can generate histograms with a common parameter. And claim two talks about them being in a matrix. That's figure 32, the only embodiment that has a matrix of histogram calculation units. And because that embodiment is the only one that relates to claim two, it should be beyond question. It certainly relates to claim one as well because claim two depends from claim one. And the figure 32 embodiment allows for 16 HCUs to treat as many as 21 parameters. There's already more parameters than HCUs. That's why you need this common parameter requirement reflected in the claims with parameter and the comparison to the criterion C. Thank you, Mr. Carson.